UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22062-CIV-ALTONAGA/Reid

**BENJAMIN LUGARDO, JR.**,

    Plaintiff,
v.

**PUBLIC HEALTH TRUST OF
MIAMI-DADE COUNTY**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Public Health Trust of Miami-Dade County's Motion for Summary Judgment [ECF No. 25], filed on December 10, 2024. Plaintiff, Benjamin Lugardo, Jr., filed a Response [ECF No. 29]; to which Defendant filed a Reply [ECF No. 38]. The Court has considered the record, the parties' submissions,[1] and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

Defendant, a public institution, operates several hospitals and clinics across Miami-Dade County. (*See* Def.'s SOF ¶ 1; Pl.'s Resp. SOF ¶ 1). Plaintiff is a 60-year-old man who worked for Defendant from February 27, 1996 until May 26, 2023; finishing his employment as a Clinical Information Analyst in the Clinical Information Systems Department ("ISD"). (*See* Def.'s SOF ¶¶ 5–6, 16; Joint Pre-Trial Stipulation [ECF No. 39] ¶¶ 1–3; Pl.'s Resp. SOF ¶¶ 5–6, 16). This

---

[1] The parties' factual submissions include Defendant's Statement of Material Facts [ECF No. 24] ("Def.'s SOF"); Plaintiff's Response to Defendant's SOF ("Pl.'s Resp. SOF"); [ECF No. 28]; and Plaintiff's Statement of Material Facts in Opposition to Summary Judgment ("Pl.'s SOF") [ECF No. 28].

action arises from Defendant's handling of Plaintiff's employment following his felony criminal charges.  (*See generally* Am. Compl. [ECF No. 19]; Def.'s SOF; Pl.'s SOF).

***Plaintiff's Employment and Arrest.***   According to Plaintiff, he received positive reviews from Defendant throughout his tenure — until his 27th year with the hospital.  (*See* Def.'s SOF, Ex. 5, Pl.'s Dep. [ECF No. 25-5] 24:1–3; 26:1–7; 32:10–15).[2]  Around this time, Plaintiff complained to ISD Associate Director Carla Pao that his then-supervisor Janise Paulison had discriminated against him.  (*See* Def.'s SOF ¶¶ 7, 11; Pl.'s Resp. SOF ¶ 11 (disputing the number of complaints but not the individuals involved); Pl.'s SOF ¶¶ 5, 16–20).

The parties dispute the nature, frequency, and timeline of Plaintiff's complaints.  (*See generally* Def.'s SOF; Pl.'s Resp. SOF; Pl.'s SOF).  Defendant states Plaintiff's complaints stemmed from Paulison seemingly thinking "everything" Plaintiff did was "wrong" and occurred solely in May 2019.  (Def.'s SOF ¶ 11).  In contrast, Plaintiff states that he raised concerns upwards of 20 times, continuing until Paulison's transfer to another department in February 2023.  (*See* Pl.'s Decl. ¶¶ 26, 44–47; Pl.'s Dep. 27:3–29:25).  Plaintiff asserts that his complaints were explicitly about Paulison's discrimination against him based on his age, disabilities, and sexual orientation as a gay man.  (*See* Pl.'s Dep. 27:23–25, 29: 9–12, 34:22–24; *see also* Pl.'s Decl. ¶¶ 19, 26, 44, 47–48; Pl.'s Resp. SOF ¶ 11; Pl.'s SOF ¶¶ 5, 16–20).  Plaintiff further notes that Pao herself made derogatory comments about his age while at work.  (Pl.'s Dep. 35:18–25).

On May 17, 2023, Miami-Dade Police arrested and charged Plaintiff with multiple felonies, including trafficking amphetamine.  (*See* Def.'s SOF ¶ 12; Pl.'s Resp. SOF ¶ 12).  In response, Defendant placed Plaintiff on unpaid administrative leave, per hospital Policy, pending resolution

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

of the criminal case. (*See* Def.'s SOF, Ex. 3, JHS Personnel Policy No. 370 ("Policy 370") [ECF No. 24-3] 1–2; Def.'s SOF ¶¶ 3, 13; *id.*, Ex. 9, May 19, 2023 Memo. [ECF No. 24-9] 1; Pl.'s Resp. SOF ¶ 3 (disputing Defendant's characterization of Policy 370 but agreeing it called for suspension in Plaintiff's case); *see also id.* ¶ 13). Under the Policy, an employee facing felony charges remains on administrative leave until the indictment is disposed of "by a trial and conviction or acquittal of the accused or by any dismissal or quashing or reversal of the same." (Policy 370, 1).

***Home Visit and Resignation Email.*** Plaintiff remained in police custody from May 17, 2023 until May 23, 2023. (*See* Pl.'s Dep. 10:3–6). The day following his release, Pao and ISD Director Ginger Adler visited Plaintiff at his residence (*see* Def.'s SOF ¶ 14; Pl.'s Resp. SOF ¶ 14 (disputing the nature of the visit but not who visited him); Pl.'s Dep. 6:19, 7:1–2); retrieved his work laptop (*see* Def.'s SOF ¶ 14; Pl.'s Dep. 10:13–14);[3] and discussed his arrest and employment (*see* Def.'s SOF ¶ 15; Pl.'s Dep. 13:7–15:14; Pl.'s Decl. ¶ 33; Pl.'s SOF ¶ 6).

The parties agree that Pao and Adler initially advised resignation was the "best thing" Plaintiff could do to avoid "los[ing] anything" (Def.'s SOF ¶ 15 (alteration added); Pl.'s Dep. 14:14–15), but the exact details of the discussion are disputed *(compare, e.g.*, Pl.'s SOF ¶ 6 ("Defendant visited [] Plaintiff's home to coerce and force [his] resignation, *explicitly stating that [he] was required to resign*[.]" (alterations and emphasis added)) *with* Def.'s SOF ¶ 15 ("While at Plaintiff's residence, Pao had a short conversation with Plaintiff and informed Plaintiff that if he resigned from PHT employment, he 'wouldn't lose anything.'" (citation omitted)); *see also* Pl.'s Decl. ¶ 14). Ultimately, Pao and Adler remained in Plaintiff's apartment until Plaintiff sent an

---

[3] Plaintiff has given conflicting testimony regarding the date of Pao and Adler's visit, vacillating between May 24, 2023 and May 25, 2023. (*See* Pl.'s Dep. 10:13–14; 17:3; 17:18). Because Plaintiff states that Pao and Adler remained at his home until he drafted and sent the resignation email (*see id.* 16:22–17:1), the Court assumes the visit occurred on May 24, 2023 — the date reflected on the email (*see generally* Def.'s SOF, Ex. 10, Pl.'s Resignation Email [ECF No. 24-10]).

email requesting termination of his employment. (*See* Def.'s SOF ¶ 16; Pl.'s Resp. SOF ¶ 16; Pl.'s Dep. 16:22–17:1). Both parties acknowledge that the resignation email meant Plaintiff could eventually be eligible for rehire by Defendant. (*See* Def.'s SOF ¶ 23; Pl's Resp. SOF ¶ 23).

***Events Following the Resignation Email.*** After resigning, Plaintiff lost his health benefits. (*See* Pl.'s Decl. ¶¶ 13,18). Five months later, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), complaining that he had been "constructively terminated because of [his] disability and age." (Def.'s SOF ¶ 18 (alteration added); Pl.'s Resp. SOF ¶ 18; Def.'s SOF, Ex. 12, EEOC Charge of Discrimination [ECF No. 24-12] 1). He asserts that Defendant coerced his resignation prior to the resolution of his criminal case in retaliation for his complaints against Paulison and due to his disabilities and age. (*See generally* EEOC Charge of Discrimination; *see also* Am. Compl. ¶¶ 13–21, 27, 32–33, 36–38).

Exactly one year after sending his resignation email, Plaintiff pled guilty to trafficking amphetamine. (*See* Def.'s SOF ¶ 20; *id.*, Ex. 8, J. of Guilt [ECF No. 24-8] [4] 3; Pl.'s Resp. SOF ¶ 20).

***The Claims.*** Plaintiff brings three claims against Defendant: (I) disability discrimination under the Americans with Disabilities Act ("ADA"); (II) age discrimination under the Age Discrimination in Employment Act ("ADEA"); and (III) retaliation under Title VII. (*See* Am. Compl. ¶¶ 23–39). He alleges that Defendant discriminated and retaliated against him by coercing his resignation a year before the resolution of his criminal case, prematurely stripping him of health benefits he relied on to treat his HIV infection. (*See id.* ¶¶ 13–21, 23–39; Pl.'s Decl. ¶¶ 13, 18, 21,

---

[4] While Defendant correctly includes Plaintiff's Judgment as an exhibit to its Motion, Defendant also attaches case information for an individual named "Joseph Webb," who has no connection to this case. (*See* Def.'s SOF, Ex. 8, J. of Guilt 1–2).

4

30). Defendant insists it is undisputed that Plaintiff voluntarily resigned from his role, and, further, the record contains no evidence of discrimination or retaliation. (*See generally* Mot.).

## II.  LEGAL STANDARD

Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citations omitted).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (alteration added; quotation marks omitted; citing Fed. R. Civ. P. 56(c)(1)).

## III.  DISCUSSION

Defendant moves for summary judgment as to all three of Plaintiff's claims.  (*See generally* Mot.).  The Court addresses each argument in turn.

### A.  Existence of Adverse Employment Action

Defendant first argues that Plaintiff did not suffer an adverse employment action, because he voluntarily resigned.  (*See* Mot. 2, 7–8; Reply 3–7).  According to Plaintiff, Defendant coerced him into resigning, thus prematurely cutting off his health benefits before his criminal case resolved.  (*See* Resp. 2–3).

Under *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995), resignations are presumed voluntary unless induced by coercion or misrepresentation.  *See id.* (citations omitted).  Plaintiff asserts that his employer coerced his resignation.  (*See* Pl.'s Resp. SOF ¶ 14; Pl.'s SOF ¶ 6; Pl.'s Decl. ¶¶ 11–14).  To assess whether an employer's actions amount to coercion, courts look to the totality of the circumstances, weighing whether the employer's conduct "deprived the employee of free will in choosing to resign ."  *Hargray*, 57 F.3d at 1568.  The Eleventh Circuit identifies the following non-exhaustive factors to guide this inquiry:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Id.* (citations omitted).

As to the first factor, Plaintiff states that his superiors came to his home and told him he "had to resign[.]" (Pl.'s Decl. ¶ 33 (alteration added); *see also* Pl.'s Resp. SOF ¶ 14).[5]  Defendant

---

[5] Defendant argues that Plaintiff gave "clear . . . testimony" on a topic and is now improperly trying to create a factual dispute by submitting a declaration that contradicts his deposition testimony. (Reply 6 (alteration added); *see also id.* (citing *Santhuff v. Seitz*, 385 F. App'x 939, 944 (11th Cir. 2010) (citation omitted))).  It is unclear whether Plaintiff is contradicting his deposition testimony; instead, it appears he is

6

asserts that Pao and Ginger merely counseled Plaintiff that "he wouldn't lose anything" if he resigned. (Def.'s SOF ¶ 15 (quotation marks omitted)). The parties' disagreement as to whether Plaintiff was "given some alternative to resignation[,]" weighs in favor of allowing the issue to proceed to a jury. *Hargray*, 57 F.3d at 1568 (alteration added); *see also United Staes v. Col*e, 755 F.2d 748, 755 (11th Cir. 1985) ("[C]redibility choices in deciding which version of a story to believe are a matter for the jury." (alteration added; citation omitted)).

The Court is similarly unconvinced that undisputed facts show Plaintiff understood the nature of the choices Defendant allegedly presented. *See Hargray*, 57 F.3d at 1568 (listing this question as a possible factor in the coercion analysis). Admittedly, "[r]esignations obtained in cases where an employee [wa]s faced with such unpleasant alternatives" like resigning or losing benefits, are "nevertheless voluntary[.]" *Id.* (alterations added; citation omitted). Likewise, an employee's perception that resignation is his only option is irrelevant. *See Rademakers v. Scott*, 350 F. App'x 408, 412 (11th Cir. 2009) (citation omitted). Yet, Plaintiff asserts that Adler and Pao *told him* he had *no choice* but to resign, while Defendant states Plaintiff was simply presented with two unfortunate options. (*See* Pl.'s Decl. ¶¶ 33, 14; Pl.'s Resp. SOF ¶ 14; Mot. 8).

The third and fifth factors also counsel against having the Court declare no adverse employment action is shown.[6] Plaintiff states he was made to draft his resignation email while his

---

adding to it. *See McSwain v. World Fuel Servs. Corp.*, No. 20-cv-21203, 2022 WL 17551061, at *4 (S.D. Fla. Dec. 9, 2022) (considering a declaration when it merely expanded upon statements made in the deposition without contradicting the statements)*; see also Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp. 2d 1237, 1248 (M.D. Ala. 2001) ("Because deposition transcripts rarely evince a deponent's . . . full memory . . . an [sic] subsequent affidavit is not a sham if it merely expounds on earlier testimony [or] gives a more complete answer[.]" (alterations added; citation omitted)). At his deposition, when asked if Pao and Adler "said anything else" to him during the meeting at his home, Plaintiff wavered at least once in his recollection, answering: "*That I can recall?* No." (Pl.'s Dep. 15:11–12 (emphasis added); *see also* Def.'s SOF ¶ 15). In Plaintiff's Declaration, he *adds* that Pao and Adler told him he *had* to resign while at his home and "force[d]" his resignation. (Pl.'s Decl. ¶¶ 14, 33 (alteration added); Pl.'s Resp. SOF ¶ 14).

[6] The Court does not address the fourth *Hargray* factor, because the facts do not indicate whether Plaintiff was allowed to choose his resignation date. *See* 57 F.3d at 1568 (identifying the fourth factor).

7

superiors remained at his home (*see* Pl.'s Dep. 16:22–17:1), and his superiors gave him no opportunity to consult an attorney or his union (*see* Pl.'s Decl. ¶ 14). Additionally, less than 24 hours elapsed between Plaintiff's release from custody and Defendant's alleged coercion of his resignation. (*See* Def.'s SOF ¶ 14; Pl.'s Resp. SOF ¶ 14 (contesting the substance of the discussion but not the date of the home visit); *see also* Pl.'s Dep. 10:3–6). While these are weak facts favoring Plaintiff, a reasonable factfinder may infer these circumstances created a coercive environment. *See Poindexter v. Dep't of Human Res.*, 946 F. Supp. 2d 1278, 1286–88 (M.D. Ala. 2013).

### B. Proof of ADA and ADEA Discrimination (Claims One and Two)

Defendant argues that even if the Court cannot find Plaintiff voluntarily resigned as a matter of law, Plaintiff's claims under the ADA and the ADEA fail due to insufficient evidence. (*See* Mot. 10–18; Reply 7–9). The ADA and ADEA prohibit discrimination in employment decisions, including in cases of termination. *See* 42 U.S.C. § 12112(a); 29 U.S.C. § 623(a)(1). "[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023) (alteration added). Absent direct evidence, as here, the relevant inquiry at summary judgment is whether there is "enough circumstantial evidence to raise a reasonable inference of intentional discrimination[.]" *Id.* at 947 (alteration added; quotation marks and citation omitted).

Courts commonly analyze these claims under the *McDonnell Douglas* burden-shifting framework. *See Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (ADA claim) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); other citation omitted)); *see also Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (ADEA claim) (citations omitted). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *See Akridge*, 93

F.4th at 1191 (citation omitted). To do so, a plaintiff must show: (1) membership in the class protected by the statute (for ADA claims, persons with a qualifying disability; for ADEA claims, those aged 40 to 70); (2) the existence of an adverse employment action; (3) qualification for the position prior to termination; and (4) the employer's better treatment of 'similarly situated' employees outside the protected class. *See Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024) (citation omitted). If the plaintiff is successful, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision; at which point the burden of production shifts back to the employee to show that the employer's stated reason is a pretext for discrimination. *See id.* (citation omitted).

At the summary judgment stage, the *McDonnell Douglas* framework is merely an "evidentiary tool" and "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion." *Tynes*, 88 F.4th at 944–45 (quotation marks omitted; quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); other citation omitted). While establishing a prima facie case under the *McDonnell Douglas* framework can *help* determine whether sufficient evidence exists for the case to proceed, it is not a required step to survive summary judgment. *See id.* at 941–42.[7]

Particularly when a plaintiff lacks similarly situated comparators to support his claim at summary judgment, a court may instead assess whether he presents a "*convincing mosaic*" of circumstantial evidence sufficient to allow a reasonable factfinder to infer discrimination. *Davis*,

---

[7] While a "prima facie case" can generally refer to a "plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue," it holds a "different meaning" within the *McDonnell Douglas* framework. *Tynes*, 88 F.4th at 945 (quotation marks and citations omitted). There, "prima facie case" refers to a plaintiff's entitlement to a "legally mandatory, rebuttable presumption" which, if established, forces a defendant to offer evidence explaining its actions. *Id.* (quotation marks and citation omitted). Hence, failing to establish a prima facie case under *McDonnell Douglas* does not automatically doom a plaintiff's claim at summary judgment. *See id.* at 941.

9

2024 WL 4051215, at *3–4 (emphasis added; quotation marks omitted); *Sims*, 704 F.3d at 1333; *see also McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024) (emphasizing that both the *McDonnell Douglas* framework and the convincing-mosaic approach are merely "two paths to the same destination — the ordinary summary judgment standard" (citing *Tynes*, 88 F.4th at 943–47)). Under the convincing-mosaic approach, courts move beyond the rigid prima facie framework and consider all relevant evidence bearing on intentional discrimination. *See Tynes*, 88 F.4th at 947. "Indeed, the plaintiff will *always* survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* at 946 (emphasis added; quotation marks and citation omitted).

Defendant argues that Plaintiff fails to identify adequate similarly situated comparators to support his discrimination claims (*see* Mot. 2, 15; Reply 7–9), but the Court need not resolve this issue. Instead, the Court evaluates whether Plaintiff presents a "convincing mosaic" of evidence sufficient for a jury to infer discrimination because of Plaintiff's disability and age, in the absence of similarly situated comparators.

### i. Evidence of Disability and Age

Defendant first argues that Plaintiff fails to present evidence of a qualifying disability that substantially limits a major life activity, as required by the ADA. (*See* Mot. 10–12 (citing 42 U.S.C. § 12102(1))). To qualify as disabled under the ADA, a plaintiff must (1) have a physical or mental impairment that substantially limits one or more major life activities; (2) have a record of such an impairment; *or* (3) be regarded as having such an impairment. *See* 42 U.S.C. § 12102(1).

Plaintiff submits a sworn Declaration and his deposition testimony attesting to his HIV status. (*See* Pl.'s Decl. ¶¶ 7, 13, 21; Pl.'s Dep. 34:24–25). Such evidence creates a triable issue of

fact as to the existence of a disability, and Plaintiff need not submit medical records to survive summary judgment. *See also Sugg v. City of Sunrise*, No. 20-13884, 2022 WL 4296992, at *7 (11th Cir. Sept. 19, 2022); *see also id.* at *8 ("The ADA directs that 'disability' be 'construed in favor of broad coverage.'" (quoting 42 U.S.C. § 12102(4)(A))). Plaintiff also asserts that his condition requires ongoing treatment, such that losing access to his healthcare plan placed his life "in jeopardy[.]" (Pl.'s Decl. ¶ 21 (alteration added); *see also id.* ¶¶ 7, 13). This statement is sufficient evidence for a reasonable fact finder to conclude that Plaintiff's HIV diagnosis "substantially limits" the functioning of his immune system, a recognized "major life activity" under the ADA.[8] *Powell v. Pinellas Cnty.*, No. 22-cv-577, 2023 WL 4419730, at *3 (M.D. Fla. July 10, 2023) (collecting cases; footnote call number omitted)).

As for Plaintiff's ADEA claim, the parties agree that Plaintiff is 60 years old, placing him squarely within the protected class. (*See* Joint Pre-Trial Stipulation 1).

### ii. Evidence of Discrimination

To establish a "convincing mosaic" of discrimination, a plaintiff may present evidence such as suspicious timing, ambiguous statements, systematically better treatment of similarly situated employees, or pretextual justifications for disparate treatment. *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks and citation omitted). Plaintiff asserts that Defendant forced him to resign a full year before his criminal case concluded, thereby prematurely terminating his healthcare benefits. (*See* Pl.'s Dep. 34:24–25; Pl.'s Decl. ¶¶ 13, 17–22, 26–28, 30, 32, 44–49). He states that this treatment occurred just months after he repeatedly complained at least 20 times about his supervisor's discrimination against him based on his disability and age. (*See* Pl.'s Decl. ¶¶ 19–20, 26–28, 44–49; *see also* Pl.'s Dep. 24:18–29:21).

---

[8] The Court declines to address Plaintiff's claim that his PTSD substantially limits a major life activity, as the ADA requires only one qualifying disability to sustain a discrimination claim. *See* 42 U.S.C. § 12112(a).

Additionally, Plaintiff states that the *same* supervisor who forced his resignation had a history of making repeated derogatory comments about his age at work. (*See* Pl.'s Dep. 35:18–25).

Plaintiff further identifies multiple non-disabled co-workers under the age of 40 who engaged in drug-related misconduct yet did not face coerced resignation. (*See* Pl.'s Decl. ¶¶ 36–43; Pl.'s Dep. 20:11–24:8). Among them, he lists: (1) Colleen Burke, found using drugs at the Jackson Hospital Pharmacy, (2) Ladro Logan, caught doing drugs on the job; and (3) Michelle Mizrhahi, arrested for medication-related misconduct in the pharmacy. (*See* Pl.'s Decl. ¶¶ 36–37, 40–43; Pl.'s Dep. 20:11–24:8). Defendant points out that these employees' criminal cases did not result in felony convictions, some were not charged, and they were otherwise treated similarly to Plaintiff. (*See* Mot. 2; Reply 8). Plaintiff, however, states that at the time of his coerced resignation, he, too, had not been adjudicated guilty of a felony. (*See* Pl.'s Dep. 23:22–23 ("I wasn't even found guilty at th[at] point . . . ." (alterations added))).

While the Court makes no determination as to whether these employees are "strict comparator[s]" under the ADA and ADEA, Defendant's treatment of the listed employees remains relevant to the broader discrimination inquiry — focused, as it is, on whether a convincing mosaic of evidence supports a finding of discrimination. *Jenkins v. Nell*, 26 F.4th 1243, 1250–51 (11th Cir. 2022) (alteration added; citation omitted).

### iii.  Pretextual Reason for Discrimination

Finally, at summary judgment, the Court must look to whether Plaintiff submits evidence showing that Defendant's stated reason for termination was merely a pretext for discrimination. *See Bogle v. Ala. L. Enf't Agency*, No. 23-13947, 2024 WL 4635025, at *4 (11th Cir. Oct. 31, 2024). Plaintiff does not dispute that Defendant's Policy compelled it to place him on administrative leave. (*See* Def.'s SOF ¶ 3; Pl.'s Resp. SOF ¶ 3 (disputed on other grounds)). His

grievance instead centers on the allegedly premature termination of his employment prior to the conclusion of his criminal case. (*See* Pl.'s Decl. ¶ 11 ("I was constructively terminated when I was forced to resign under threat from my employer[.]" (alteration added)); Pl.'s SOF ¶¶ 2–3, 6)).[9] Because Defendant offers no justification for this purported action, Plaintiff has no opportunity to contest its reasoning or otherwise argue pretext. *See Kuczynski v. Lyra Mgmt., Inc.*, No. 8-62067-Civ, 2010 WL 326060, at *4 (S.D. Fla. Jan. 21, 2010) (finding that a defendant failed to offer a "nondiscriminatory reason for the allegedly discriminatory action").

### C. Proof of Title VII Retaliation Claim (Claim Three)

Finally, Defendant moves for summary judgment on Plaintiff's Title VII retaliation claim, arguing that Plaintiff presents insufficient evidence. Title VII prohibits employment discrimination based on race, color, religion, sex, (including gender identity and sexual orientation), and national origin. *See* 42 U.S.C. § 2000e-2(a)(1); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 659–61 (2020) (confirming sexual orientation as a protected category under Title VII). Plaintiff states that he is a gay man (*see* Pl.'s Decl. ¶ 6), and that he faced retaliation after complaining about discrimination based on his sexual orientation (*see id.* ¶ 19 ("I was retaliated against due to my complaints about the discrimination[,] . . . includ[ing] my complaints about unlawful discrimination . . . based on *sexual orientation*[.]" (alterations and emphasis added))).

To establish a prima facie case of retaliation under Title VII, "the plaintiff must show (1) that [he] engaged in statutorily protected expression; (2) that [he] suffered an adverse employment

---

[9] Defendant *implies* that it counseled — or, under Plaintiff's version, coerced — Plaintiff into resigning to preserve his retirement benefits and maintain eligibility for rehire. (*See* Def.'s SOF, Ex. 2, Decl. of Enbar Cohen ("Cohen Decl.") [ECF No. 24-2] ¶¶ 8–9, 11). Yet, Defendant does not make this argument, instead overlooking the core issue raised by the parties' briefing: Plaintiff contests the "termination," not the administrative leave. (*See generally* Mot.). Moreover, even if Defendant adopts the reasoning implied in its Declaration, Plaintiff still presents enough evidence for the question of discrimination to proceed to a jury.

action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (alterations added; quotation marks and citation omitted). Like discrimination claims under the ADA and ADEA, retaliation claims under Title VII at summary judgment are typically analyzed under the *McDonnell Douglas* burden-shifting framework; but, as noted, courts may instead conceptualize the summary judgment question as whether Plaintiff presents a "convincing mosaic of circumstantial evidence" from which a jury could infer retaliation. *Calvert v. Doe*, 648 F. App'x 925, 929 (11th Cir. 2016) (quotation marks and citation omitted); *see also Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023) (citations omitted).

### i. Evidence of Engaging in Statutorily Protected Expression

Defendant contends that Plaintiff did not engage in statutorily protected activity sufficient to support his retaliation claim. (*See* Mot. 19). "A plaintiff engages in statutorily protected activity when he complains about an action that he reasonably believed was unlawful under Title VII." *Banks v. iGov Techs., Inc.*, 661 F. App'x 638, 645 (11th Cir. 2016) (citation omitted). "Statutorily protected expression includes internal complaints of discrimination to superiors[.]" *Gerard v. Bd. of Regents of State of Ga.*, 324 F. App'x 818, 825 (11th Cir. 2009) (alteration added; citation omitted). Defendant characterizes Plaintiff's complaints to his manager as mere "generalized harassment untethered" to any discrimination. (Mot. 19 (alteration added)).

Yet, Plaintiff states that his repeated complaints to his superior revolved around the discrimination he experienced. (*See* Pl.'s Decl. ¶ 19 ("I was retaliated against due to my complaints about the discrimination[,] . . . includ[ing] my complaints about unlawful discrimination . . . based on *sexual orientation*" (alterations and emphasis added))). Importantly, a Title VII plaintiff need not prove actual discrimination to establish a retaliation claim; instead,

14

he must only have a good faith belief that he was subjected to discrimination. *See Ivey v. Paulson*, 222 F. App'x 815, 819 (11th Cir. 2007) (citation omitted). Plaintiff states that he *believed* he was being discriminated against. (*See* Pl's Dep. 30:15–18). Given the parties' disagreement over the content of Plaintiff's verbal complaints, the Court leaves this fact issue to the jury. *See Green v. Stericycle, Inc.*, No. 16-24206-Civ, 2017 WL 3601370, at *1 (S.D. Fla. July 18, 2017) ("Disputed factual issues are for the jury to determine." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).

    **ii. Causal Relationship Between Adverse Event and Statutorily Protected Expression**

Defendant next argues that Plaintiff cannot establish the necessary causal relationship between the alleged protected activity and the adverse employment action. (*See* Mot. 19–20). To show this connection, a plaintiff must "at a minimum, generally establish that [] defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (alteration added; citation omitted).

As in ADEA and ADA cases, the Eleventh Circuit has identified three nonexclusive examples of circumstantial evidence that can raise a reasonable inference that an employer retaliated against an employee: "suspicious timing, ambiguous statements, . . . systematically better treatment of similarly situated employees; or [] that the employer's justification for its action is pretextual." *Berry*, 84 F.4th at 1311 (alterations added; citation omitted). Plaintiff presents minimally sufficient evidence for a factfinder to infer this causal relationship. Plaintiff notes that he lodged upwards of 20 complaints about the discrimination he faced at the hands of his direct superior. (*See* Pl.'s Decl. ¶¶ 19–20, 26–28, 44–49; *see also* Pl.'s Dep. 24:18–26:7, 26:24–29:21). Plaintiff also states that the *same* supervisor — Pao — who "coerced" his resignation knew of

these complaints, as Plaintiff repeatedly raised them directly to her in her office. (*See* Pl.'s Dep. 34:24–25; Pl.'s Decl. ¶¶ 13, 17–22, 26–28, 30, 32, 44–49).

Although the three-month gap between Plaintiff's complaints and the adverse action may not, by itself, establish a causal connection, *see Thomas*, 506 F.3d at 1364 (citations omitted), Plaintiff offers additional facts. He identifies employees who were caught using drugs on the job — none of whom was gay or had reported discrimination based on sexual orientation — yet were not forced to resign. (*See* Pl.'s Decl. ¶¶ 36–43; Pl.'s Dep. 20:11–24:8); *see also Jenkins*, 26 F.4th at 1251 (considering evidence regarding other employees, even when the employees were not strict comparators under the relevant disability statute (citation omitted)). Taken together, Plaintiff's evidence creates a genuine factual dispute over the causal link between his termination and his sexual orientation.

### iii. Pretext for Retaliation

Finally, Defendant argues that Plaintiff cannot rebut its stated reason for placing Plaintiff on administrative leave — his felony charges. (*See* Mot. 20). As explained, Plaintiff defines the adverse employment action as the coerced resignation, not the leave placement. (*See* Pl.'s Dep. 23:21–24; Pl.'s Decl. ¶ 11 ("I was constructively terminated when I was forced to resign under threat from my employer[.]" (alteration added)); Pl.'s SOF ¶¶ 2–6)).

### IV. CONCLUSION

This case hinges on disputed, unrecorded verbal exchanges that culminated in the end of Plaintiff's employment — one year earlier than company Policy dictated. Plaintiff's evidence, although admittedly sparse, creates a triable issue on every claim. *See Guevara v. Lafise Corp.*, 127 F.4th 824, 830–31 (11th Cir. 2025) (citation omitted).

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Public Health Trust of Miami-Dade County's Motion for Summary Judgment **[ECF No. 25]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 25th day of February, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record